This time we'll hear O'Daniel v. Martuscello. Good morning. Good morning, Your Honor. May it please the Court. Pleasure to be here. Your Honor, this case raises a significant and fundamental issue dealing with the constitutional right to choice of counsel. And it arose where Mr. O'Daniel's retained counsel became gravely ill and hospitalized on the eve of trial. Now, the point of contention in this case, and Mr. — I will address, Mr. O'Daniel submits he should prevail, are two. One is that he sufficiently informed the Court on two occasions that his constitutional right to choice of counsel was being violated. Those words were not used, but the words that were used. That he sufficiently informed the Court, and he being through an attorney he was required to use, not someone he retained. But someone he was familiar with. Mr. Bruno had represented him at the arraignment in this case and had represented him in a domestic case, in a divorce case, right? True. He was familiar with Bruno. He didn't come in and say, I know this guy. I don't want him as my lawyer. He's no good. Well, it's true. What did he say? What were the words that he used that you claim were sufficient notification? There are two. The first was on October 5th, which was the pretrial conference, and the second was on October 12th. Both words uttered by Mr. Bruno, but this was Mr. O'Daniel's effectively pro se motion for an adjournment. The first was he said that the system is unfair to him because Mr. Martino, because of Mr. Martino's health. As Bruno also said, the Court was aware of the facts relating to this. Now, there's, that's very important, those two statements. But what was he, what was he asking for? Well, what's important, and what the Court knew what that meaning was from the history in this case, and that's the important thing. The Court knew because there was a history that had gone on here. So the Court was aware that there was an initial adjournment granted because of Mr. Martino's health, and Mr. Martino had recovered. These flare-ups happen, you recover, he was granted an adjournment. The people were then granted two adjournments subsequent to that just for witnesses taking vacation. During that period of time, by the way, through the whole summer, Mr. Martino was perfectly capable to try this case. Am I correct that the only, that the only objection interposed was that the, was that Mr. Bruno would not have enough time to prepare? And Mr. Bruno said, well, no, I do have enough time to prepare. No. And again, that's why it's very important to understand where this request and objection is coming from. The request and objection is coming from pro se. He's in conflict with Mr. Bruno over this request. That's very clear when it's initially requested. There is Mr. Bruno saying to the Court, well, he wants me to make this, but I'm telling you I'm ready to go forward with this trial, Judge. And I'm explaining to him that, Judge, you're going to have to effectively say you're going to have to grant this because there are these standards and goals, in other words, that the trial has to go through, but I'm making it because he's insisting. But what was the reason offered for not going to trial that day or going to trial on the schedule set as of that day? Mr. Bruno in the first case, October 5th, is saying, well, I can be prepared. In the second instance, he says after that initial adjournment is denied. The second instance is on the day of trial. This is October 12th. That's when Mr. Bruno says, well, we're renewing because we need more time to prepare. Now, this is after a rejection has been made on the basis of Mr. Martineau isn't here. So you deal with the cards you're dealt. But this is the significant thing at that point. And this is what the Chief Judge of the New York Court of Appeals in dissent, Rulotin, said it was unequivocal and beyond doubt that the judge was on notice at this point that he was raising an objection to violation of his choice of counsel. Mr. Bruno read to the Court a New York statute that protects the choice of counsel. And that statute says that in the case and in this specific instance, very specific to this situation. Is that a civil statute? It's civil trials? It is. It is. Now, I could go through the long history of that statute. There's actually a relationship between that statute dating back into the 1700s to the constitutional right in a criminal proceeding of choice of counsel. Now, Chief Judge alluded to that, but he said even if you don't say this connection, he says the salient point is. Read us what he said to the Court. In which instance? The statute? Yes, Your Honor. Either one. Whatever you say best supports the proposition that you're making. Well, the first one is I've said verbatim what was said. And if you forgive me, Your Honor, I need to locate this. My understanding has been that the point raised to the Court was the question whether more time is needed. So what is it that converts that into, as you say, clear notice to the Court that the objection was being made to the identity of counsel? Well, the words that were spoken. I can say, Judge LaValle, as close verbatim to the statute of what the statute says and the key relevant words. Key relevant words are that says that if the attorney is physically incapacitated, then the court must grant, must stay the proceeding until notice is given, and there's 30 days after this notice for the appointment of counsel. It all that has nothing to do with an extension of time to prepare for a case. That has to do with protecting the right to keep your lawyer or if your lawyer is physically incapacitated and that lawyer cannot proceed. In support of the proposition that there's a law that requires giving 30 days. He's been asking, we don't have enough time, and there's a statute that says that where counsel is incapacitated, you have to give 30 days. Yes. Well, they're two different subjects. And so you can't reconcile the two. Actually, what he has said are two different bases. And what the point is, too, here, that it hits exactly clearly established Federal law, and it's in the main case, or I'm sorry, in the PAL, no, in the main case, in which the Supreme Court says a court has an affirmative duty not to circumvent or dilute the constitutional right of choice of counsel and also an affirmative obligation to respect and preserve that constitutional right. So what's going on is there's notice. Isn't it clear in the context that this was spoken to the judge that while the reference was to a statute which speaks about preserving the right to counsel, the context in which the reference was made to that statute was to support an application for more time to prepare. He says, we need, we want more time to prepare, and there's a statute addressing this circumstance where counsel has become ill that says that the court must give 30 days. Well, I would respectfully disagree. I would say that they deal with two different subject matters, and it does dovetail with, again, what happened initially with respect to the initial saying there has to be an adjournment because of Mr. Martineau's health. I see, I just want to move now to the alternative ground, and that is that certainly it's submitted, that there, it was enough before this, before this Court said to this Court that triggered a duty to inquire as to what was, if, I argue that it was clear at that point, but if there's any question that it triggers a duty to inquire, and that's clearly established federal law, and I rely on the Supreme Court's decision in Martel, and I'm going to quote two passages out of it. This is 565 U.S. at 664, and it says that when you're dealing with substitution of counsel, it's, quote, it's, quote, hornbook law that a judge must determine reasons for the dissatisfaction. And then it also says, and quote, courts cannot properly resolve substitution motions without probing why the defendant wants new, wants a new lawyer. Now, the only distinguishing fact. He never said I'm dissatisfied with Bruno. I'm sorry, say it again. He never said I'm dissatisfied with Bruno. He was there for both the, I think it was the October 5th and 12th conferences. He had to be there. He never said I'm dissatisfied, which would trigger, well, why are you dissatisfied? Yeah. Well, there's dissatisfaction. There is a complaint going on. There's no question there's a complaint. Why did he even make that motion initially? And then the specific reason, at least, that's repeated by Mr. Bruno is Mr. Martino's health. There's dissatisfaction here. And so it's triggering this duty to inquire, and it's clearly established federal law. That, as we know, goes through so many multiple different areas. But here I'm citing to you dealing with choice of counsel and substitution of counsel directly on point. Okay. You've reserved a couple minutes rebuttal. Yes. Thank you, Your Honor. We'll hear you then. Thank you. Good morning, Your Honors. May it please the Court, I'm Matthew Keller for the people in this case. We're here to determine a very narrow issue, and that's whether the New York Court of Appeals actually rejected Petitioner's counsel of choice claim. The district court correctly denied the writ in this case for two principal reasons. The clearly established Supreme Court law applicable here is the rule from the Morris v. Slappy case, where when the right to counsel of choice is implicated, the denial of an adjournment violates that right only when the district court's denial is an unreasonable and arbitrary insistence on expeditiousness in the face of a justifiable request. But Slappy dealt with a request to replace counsel. Correct. I think the argument here was there was never a clear request for that. Absolutely, Your Honor. That was my second point. If that's the Court's concern, I'm happy to address that first. There clearly was never an invocation of the right to counsel at all here. And the important point is, is not whether Petitioner's position here on what the nature of the request was, was reasonable. Was it the only reasonable interpretation of the record? Now, certainly it's our position that it was clear from the record that the basis for the adjournment request, both of them, was for more time for Bruno to prepare. But even if the Court disagrees with that, that certainly is not an unreasonable reading of this record. Judge LaValle, you asked about the invocation of CPLR 321 and what exactly was said. And I think that's a very important point here, because that's certainly the most important citation to the record that Petitioner keeps stressing. He cites the statute, notes that it's a civil statute, but then what he says right after that is very telling. He says, quote, and this is at the Petitioner's sealed appendix at page 81, my client in requesting further time to prepare requests me to make that motion. So, you know, it's clear that he was not invoking that statute for a time to get a different counsel or time for Martineau to return. It was, it was, he was using whatever tools were at his disposal to give Bruno more time to prepare. In any event, the Court shouldn't be looking at what the purpose and legislative history of a State statute is on habeas review. As the Court is aware, State law is just simply not relevant. It's what the Sixth Amendment requires here. It's also important to note that the other Supreme Court decisions on which the Petitioner is relying here today simply are not relevant. Main v. Moulton, while a Sixth Amendment case had to do with the deprivation of a right to counsel in the context of recorded statements of a client. The holding of that case is completely in opposite to the case here. Martel is not even a Sixth Amendment case. It's a statutory case about the right to death penalty counsel in Federal prosecutions. But if I can, I just want to address my first point briefly. Because even if the Court found that the only reasonable reading of this record was an invocation of the right to counsel of choice, Petitioner still would not make a Sixth Amendment claim and certainly wouldn't show that the court of appeals decision was a violation of clearly established Federal law. There was no justifiable request for a delay here. In denying the second request on October 12th, the Court went into a well-reasoned explanation as to why he was denying it. You're saying that even if it had been clearly stated to the trial judge, the defendant wants a new lawyer? I'm sorry, that he wants a new lawyer and that's why we need more time to get a new lawyer? You're saying that it would still be? No, Judge LaValle, not exactly. What I'm saying is even if the Court was on notice here that there was some dissatisfaction by Petitioner as to Bruno representing him, and there was none. I'm just moving on now in the alternative. In Slappy, in the Morris v. Slappy case, it was very clear that the defendant there was dissatisfied with his counsel. There were two trials and at almost every opportunity the defendant there stood up and said, this man is not my lawyer, Mr. Goldfein is my lawyer, Hotchkiss is not my lawyer. There the request was clear as can be. And the Court still said that only in the basis of an unreasoned and arbitrary insistence on expedition is in the face of a justifiable request. Here, the judge, the trial judge in denying the, excuse me, in denying the continuance motion gave several reasons why, several, you know, reasoned explanation as to why he was denying it. There's no motions before me. There's no discovery applications before me. I haven't heard anything about we need more time for witness preparation or preparation of expert reports. He's basically giving the lawyer things he can say to grant this application. Silence. Again, the Petitioner is there through all of this. Not only does he never express disapproval with Bruno appearing as his lawyer during those two appearances, this had been going on for months. And I think there are two final important facts that I'd like to put before the Court, even apart from these two appearances. As we know, Martino was not unwell for the pendency of this entire proceeding. It's really important, number one, that he was the one who first requested to the judge in his April 2010 adjournment request. I understand this is going long. I understand it's getting a little bit unreasonable. I'm happy to help the Court find substitute counsel. Just let me know. Very important there. And second, Bruno never, during the pendency of the trial or even afterwards, ever said, I didn't want Bruno as my lawyer. After the verdict, after his risk at going to trial was unsuccessful, for the first time, Bruno and Martino submit affidavits in support of their motion to set aside the verdict. They say the Court should have granted the application for an adjournment. No affidavit from Bruno saying — I mean, excuse me, no affidavit from Petitioner saying, I didn't want Bruno as my lawyer. In fact, the argument was never raised at the trial level that — Am I right? He got 20 years, right? He got 20 years. It was a — a lot of the sentences were run consecutively, and they all ended up to 20 years. Am I right that he rejected that offer of six months? Not exactly, Your Honor. The offer was, I believe, for six or seven months, but that was only if the defendant was accepted into a very rigorous diversion program that they used up in Clinton County at the time. There was no guarantee in the — in the plea offer that he would be admitted into that program. And in the event that he wasn't, the plea offer contemplated, I believe, a seven-year sentence. So it was still a good deal in light of the result of trial, but it wasn't only six months. Five months. Five months. I'm sorry, Your Honor. And it's the even safer program? The even safer program. That's correct. And there was no — apparently the qualifications to get into that program were quite stringent, and in light of the nature of the charges here, it wasn't guaranteed that he would be able to meet those requirements. But if he didn't get in, it would be seven years. Correct, Your Honor. I believe that's my understanding. And that would have been set forth at the October 5th conference. One thing about that conference, because I know, you know, in addition to the other half of the petitioner's argument is the statement that the system is being unfair to me because of Martineau's health. Now, by itself, that's a very ambiguous statement. You know, the legal system has nothing to do with the state of Martineau's health. But when viewed in context, it becomes completely clear that that is not a request from Martineau as his attorney. This is a case where at least three weeks prior to that, the court had sent the letter to Martineau saying you should find a substitute. This has been going on for a while. I've granted you previous requests. I want to go forward on October 12th. In response to that, Martineau wrote back the same day and said, I got you. I've contacted Bruno to be the attorney, and I've advised Petitioner of this. So the record is clear that at least from September 21st, Petitioner was aware that there would be a likely substitute at trial. At no point from then until the October 5th conference did he – is there any indication in the record that he objected to Bruno being his attorney? And this is despite Bruno's representation at the conference that they had had several discussions about the plea offer, that they had – that he had been essentially acting as Petitioner's lawyer for the previous three weeks. And in the absence of any suggestion in the record that Petitioner was unhappy with Bruno as his lawyer, we never even get to the analysis of whether the right to counsel of choice was violated by the denial of the adjournment. And if the Court has no further questions, I'll rest on my brief. Thank you. Thank you, Your Honor. Mr. Bryan, you have rebuttal. Thank you, Your Honors. First, I think it's important to say there are no magic words to invoking the constitutional right to choice of counsel, particularly where we're dealing with a situation that effectively this is a pro se motion. He wouldn't know what the right words were to use. He would say something that in his gut is wrong. So he said in his gut, I submit words that had to do with I can't go to trial. I'm being stopped from going to trial with my retained attorney. I want Martineau. So to say, well, it's vague, well, it's pro se. And usually this Court — He didn't say anything like that. Well, he said and the exact words were the legal system is unfair because of Martineau's health. And so it's not about time to prepare because of Martineau's health. Martineau's health is Martineau's not there. He's my attorney. He's — I can't have him. Well, why can't that be read as saying because of Martineau's health I have to go to trial with a lawyer who doesn't have the time to prepare? I mean, that actually makes — Well, I mean, let's say, Judge Jacobs, that that's another interpretation. Doesn't it then, though, even though we can't — let's say we can't say what interpretation, but doesn't it at least meet the threshold that the Court has to inquire what do you mean? That's the question. And I say under those circumstances, under clearly established Federal law, the Court has the duty to ask what do you mean? And it didn't. I submit that there's a lot of facts here and what he meant, and the Court actually knew what he meant because of the history he meant. Why aren't you granting the extent — the adjournment again like you did the first time when he was ill and you said you gave time here? Why is it that you gave the people an extension of time for something less significant? Why is it that you didn't say to me, I'm the — I'm the person who decides who represents me. Why didn't you tell me I have to choose the lawyer and not go to Martineau to be the one to arrange for another lawyer, and I'm just told about that and I'm supposed to live with that? Thank you. Thank you both. Thank you. We'll reserve decision. The appeal in the United States v. Diaz is taken on submission. The appeal in Zappin v. Cooper is taken on submission. That's the last case on calendar. Please adjourn court. Thank you. Thank you. Thank you. Thank you. Thank you.